34 P.3d 835 (2001)
109 Wash.App. 140
Patricia MILLER; and Patricia Miller as guardian for Theodore J. Quirmbach, Jr., Appellant,
v.
Ralph A. LIKINS and Jane Doe Likins, husband and wife; The Municipality of Federal Way, a municipal corporation; and King County, a local governmental entity, Respondents.
No. 47315-8-I.
Court of Appeals of Washington, Division 1.
October 15, 2001.
Publication Ordered November 15, 2001.
*836 Suzanne L. Elliott, Laurence J. Severance, Seattle, for Appellant.
Charles C. Parker, Franklin L. Smith, Seattle, Patricia A. Richardson, Federal Way, Susan Machler, Simeon Osborn, Seattle, for Respondents.
AGID, C.J.
This is a personal injury action filed by Patricia Miller individually and as guardian for her minor son Theodore Quirmbach, Jr. against the City of Federal Way ("the City"), and other defendants. Quirmbach was injured in 1997 when a vehicle driven by Ralph Likins struck him on 28th Avenue South in Federal Way. The trial court granted the City's motion for summary judgment and its motion to strike portions of the expert testimony Miller offered. Because there is no genuine issue of material fact about whether the City's alleged negligence proximately caused Quirmbach's injuries, we affirm the trial court's entry of summary judgment. We also hold the trial court acted within its discretion in excluding portions of Kenneth Cottingham's expert testimony because it lacked an adequate factual basis.

FACTS
On the evening of December 29, 1997, a vehicle driven by Ralph Likins hit 14-year-old Theodore Quirmbach at a curve where 28th Avenue South converges with South 317th Street in Federal Way. At the time of the accident, Likins was traveling east on South 317th Street. His car hit Quirmbach as the road curved to the north and became 28th Avenue South. Likins, who was 87 years old at the time of the accident, has since died from causes unrelated to the accident. Patricia Miller, Quirmbach's mother, filed suit against Likins, Federal Way, and King County alleging in part that the City breached its duties to Quirmbach by "fail[ing] to adequately or properly perform design, engineering and maintenance duties instrumental to keeping the roads, streets and sidewalks and lighting in a reasonably safe condition for ordinary travel by persons using them."
Sworn witness testimony provides conflicting accounts of precisely where Quirmbach was standing when he was struck by Likins' car. The City contends that Quirmbach was skateboarding in the middle of the road when he was struck, and it submitted both eyewitness and expert declarations supporting its view. In response, Miller offered the declaration of Wesley Richards, who was standing *837 next to Quirmbach when he was hit. Richards testified that both he and Quirmbach were outside the fog line, off the traveled portion of the road, and were not on their skateboards when Likins' car struck Quirmbach. Miller's expert, Kenneth Cottingham, also declared that in his opinion, the accident occurred as Richards described it.
The City moved for summary judgment, arguing that "as a matter of law, ... the City... owed no duty to Theodore Quirmbach who was illegally skateboarding within the roadway when he was struck by the Likins automobile." The trial court, taking the evidence in the light most favorable to Miller, assumed "impact occurred outside the fog line" but ultimately granted the City's motion. The trial court also granted the City's motion to exclude the portions of Cottingham's testimony that relate to how the accident happened. Miller appeals both orders.

ANALYSIS

I. SUMMARY JUDGMENT
Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[1] On a motion for summary judgment, the trial court views all evidence and draws all reasonable inferences in the light most favorable to the non-moving party.[2] We review summary judgment orders de novo.[3] In tort actions, issues of negligence and causation are questions of fact not usually susceptible to summary judgment.[4] But a question of fact may be determined as a matter of law when reasonable minds can reach only one conclusion.[5]
Under Washington law, municipalities are generally held to fundamental negligence principles to the same extent as ordinary citizens.[6] The elements of a negligence claim are: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) injury to the plaintiff proximately caused by the breach.[7] A municipality has a duty to "exercise ordinary care to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety."[8]
The City contends it did not owe a duty to Quirmbach at all because there is no genuine factual dispute about whether he was skateboarding in the roadway when he was struck. While we disagree with the City on this point, we need not address it further. Even assuming the City breached a legal duty it owed to Quirmbach, Miller's claim fails since she cannot satisfy her burden of showing that the City's alleged negligence proximately caused Quirmbach's injuries.
The twin elements of proximate cause are cause in fact, the "but for" consequences of an act, and legal causation, whether liability should attach as a matter of law.[9] Thus, to survive summary judgment, the plaintiff's showing of proximate cause must be based on more than mere conjecture or speculation.[10] Summary judgment is proper if the non-movant "`fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of *838 proof at trial.'"[11] Washington Courts have repeatedly held that in order to hold a governmental body liable for an accident based upon its failure to provide a safe roadway, the plaintiff must establish more than that the government's breach of duty might have caused the injury.[12]
For example, in Johanson v. King County,[13] the plaintiff, who was injured in a motor vehicle accident, argued that the County was negligent in failing to remove old road lines which could mislead drivers into thinking that the road was a two-lane, rather than a four-lane road. The plaintiff asserted that Rian, the driver who caused the accident, "might have been and probably was deceived and misled by the yellow line."[14] But since Rian was killed in the accident, the plaintiff could not offer any testimony to show that he was in fact deceived by the old lines, and that his misunderstanding caused the accident. The Washington Supreme Court affirmed dismissal of the claim against the County because even if the County breached its duty of care, the plaintiff failed to present any "testimony, or inference which can reasonably be drawn from [the] testimony, that the location of the [road] line was a proximate cause of the accident."[15]
Similarly, in Kristjanson v. City of Seattle,[16] the plaintiff alleged that the City caused the motor vehicle collision in which he was injured by "failing to maintain, properly design, and properly control the use of a road in Golden Gardens Park."[17] The plaintiff complained that the City breached its duty by failing to provide adequate sight distance and signing on the road. This court affirmed the trial court's summary judgment order because the plaintiff was unable to show that the City's actions proximately caused his injuries. The court stated: "At most, Kristjanson's contentions are that, given additional sight distance, he might have reacted in a way which could have avoided the collision and that [the other driver] might have heeded warning signs to drive carefully. His contentions can only be characterized as speculation or conjecture."[18]
In this case, Miller contends that the accident occurred when Likins' vehicle crossed over the fog line and onto the shoulder of the road, striking Quirmbach. Miller claims that if the City had taken additional precautions, such as installing raised pavement markings on the fog line, lowering the speed limit, or posting additional road signs, Likins "would have been likely to be more alerted to possible presence of pedestrians, enabling him to avoid a collision." But like the driver in Johanson, Likins passed away before he could give his own sworn account of how the accident happened. There is no direct or circumstantial evidence showing that Likins was in fact confused or misled by the condition of the roadway. Like the plaintiffs in Johanson and Kristjanson, the most Miller can show is that the accident might not have happened had the City installed additional safeguards. Miller's contentions "can only be characterized as speculation or conjecture."[19] Accordingly, a jury could not reasonably infer that had the City implemented the additional precautions Cottingham suggested, Likins would not have crossed the fog line and hit Quirmbach. We conclude summary judgment was proper here because Miller failed to satisfy her burden of producing evidence showing that the *839 City's negligence proximately caused Quirmbach's injuries.

II. EXPERT TESTIMONY
We further hold that the trial court properly excluded expert testimony Miller offered to show how the accident occurred. The trial court has wide discretion in ruling on the admissibility of expert testimony.[20] This court will not disturb the trial court's ruling "`[i]f the reasons for admitting or excluding the opinion evidence are both fairly debatable....'"[21] ER 702 permits testimony by a qualified expert where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Courts generally "interpret possible helpfulness to the trier of fact broadly and will favor admissibility in doubtful cases."[22]
The City does not challenge Cottingham's qualifications as an accident reconstructionist. Rather, citing ER 703, the City argues that Cottingham's testimony on this issue was properly excluded because it is "speculative and without factual basis."[23] As this Court has stated, "[i]t is well established that conclusory or speculative expert opinions lacking an adequate foundation will not be admitted."[24] "In addition, when ruling on somewhat speculative testimony, the court should keep in mind the danger that the jury may be overly impressed with a witness possessing the aura of an expert."[25]
In his declaration, Cottingham states that "[o]n a more probable than not basis," the accident occurred when Likins' vehicle "quickly approached and veered across the fog line, momentarily leaving the north/east lane of travel." He testifies that in his opinion, "at the moment of the impact, neither [Quirmbach] nor [Richards] were on skateboards." Cottingham further declares that Quirmbach was standing outside the fog line when he was hit and "instinctively lunged toward his right to avoid the approaching car, which meant that in his effort to avoid the car, he lunged toward the lane of travel from which the car was drifting.... He was struck by the car's front bumper and thrown up on the hood. His head or body smashed the windshield on the driver's side; he was then thrown off to the left side of the windshield, and the curvature of the windshield caused him to fall to the West and continue rolling or sliding until he came to a rest near the West fog line."
The City argues that Cottingham's opinion about where on the roadway Quirmbach was struck is speculative and lacks an adequate factual basis. We agree. Cottingham admits he did not perform a quantitative analysis to support his version of the facts of the accident. At his deposition, Cottingham testified that he had no way of determining where the point of impact in this accident occurred. Cottingham further testified as follows:
Q. If you don't know where the point of impact was, then you can't tell me where in the traveled roadway or where on the shoulder of the roadway this boy was hit, can you?
A. No, only on the shoulder of the road, according to [Wesley Richards'] declaration.
Q. Is there any physical evidence that you can point to that would indicate this *840 boy was hit on the shoulder of the roadway?
A. There's nothing to show that, other than the only witness that was right there at the impact point.
When asked if there was any basis, other than Richards' declaration for forming his opinion that Quirmbach was hit on the shoulder of the road, Cottingham stated that the physical damage to the vehicle "[f]its being hit on the shoulder, but it also fits being hit in the lane of traffic."
Considering this testimony, the trial judge reasonably concluded that Cottingham's opinion as to where Quirmbach was located when he was struck was based solely on Richards' declaration, and thus lacked an adequate factual basis. It is unclear how, relying only on Richards' statements, Cottingham could have formed an expert opinion "on a more probable than not basis" that Quirmbach was "off the vehicle travel portion of the roadway" when he was struck. Therefore, we conclude the trial court acted within its discretion in excluding the testimony.[26]
BAKER and APPELWICK, JJ., concur.
NOTES
[1] CR 56(c); Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993).
[2] Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 487, 834 P.2d 6 (1992).
[3] Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 63-64, 1 P.3d 1167 (2000).
[4] Ruff v. County of King, 125 Wash.2d 697, 703, 887 P.2d 886 (1995) (citing LaPlante v. State, 85 Wash.2d 154, 159, 531 P.2d 299 (1975)).
[5] Id. at 704, 887 P.2d 886 (quoting Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985)).
[6] Keller v. City of Spokane, 104 Wash.App. 545, 551, 17 P.3d 661, review granted, 144 Wash.2d 1001, 29 P.3d 717 (2001).
[7] Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999).
[8] Owens v. City of Seattle, 49 Wash.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956); see also Ruff, 125 Wash.2d at 704, 887 P.2d 886 (County's duty); McCluskey v. Handorff-Sherman, 125 Wash.2d 1, 6, 882 P.2d 157 (1994) (State's duty).
[9] Hartley, 103 Wash.2d at 777-779, 698 P.2d 77.
[10] Ruff, 125 Wash.2d at 707, 887 P.2d 886.
[11] Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[12] See Johanson v. King County, 7 Wash.2d 111, 122, 109 P.2d 307 (1941); Wojcik v. Chrysler Corp., 50 Wash.App. 849, 857, 751 P.2d 854 (1988); Kristjanson v. City of Seattle, 25 Wash. App. 324, 326-27, 606 P.2d 283 (1980).
[13] 7 Wash.2d 111, 109 P.2d 307 (1941).
[14] Johanson, 7 Wash.2d at 122, 109 P.2d 307.
[15] Id. at 120, 109 P.2d 307. Compare Wojcik, 50 Wash.App. at 857, 751 P.2d 854 (Under somewhat similar facts, summary judgment was not proper because the plaintiff testified that he actually had relied upon the county's negligently painted center lines, which led to the accident.).
[16] 25 Wash.App. 324, 606 P.2d 283 (1980).
[17] Id. at 324, 606 P.2d 283.
[18] Id. at 326, 606 P.2d 283.
[19] Kristjanson, 25 Wash.App. at 326, 606 P.2d 283.
[20] State v. Fagundes, 26 Wash.App. 477, 483, 614 P.2d 198, 625 P.2d 179, review denied, 94 Wash.2d 1014 (1980).
[21] Davidson v. Municipality of Metro. Seattle, 43 Wash.App. 569, 572, 719 P.2d 569, review denied, 106 Wash.2d 1009 (1986) (quoting Levea v. G.A. Gray Corp., 17 Wash.App. 214, 220-21, 562 P.2d 1276, review denied, 89 Wash.2d 1010 (1977)).
[22] Linkstrom v. Golden T. Farms, 883 F.2d 269, 270 (3rd Cir. 1989).
[23] ER 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
[24] Safeco Ins. Co. v. McGrath, 63 Wash.App. 170, 177, 817 P.2d 861 (1991), review denied, 118 Wash.2d 1010, 824 P.2d 490 (1992).
[25] Davidson, 43 Wash.App. at 571-72, 719 P.2d 569.
[26] Davidson, 43 Wash.App. at 572, 719 P.2d 569 (quoting Levea, 17 Wash.App. at 220-21, 562 P.2d 1276).