[No. 7726–4–II.   Division Two.   July 31, 1986.]

JOHN A. MICONE, *Appellant,* v. THE TOWN OF
STEILACOOM CIVIL SERVICE COMMISSION,
*Respondent.*

*Neil J. Hoff,* for appellant.

*Dean A. Floyd,* for respondent.

REED, J.—John Micone appeals the trial court's order upholding the Steilacoom Civil Service Commission's denial of a hearing pursuant to RCW 41.12.090 based upon the determination that Micone's resignation as police chief was voluntary. We affirm.

On September 7, 1982, Chief of Police Micone sent two letters to Robert Anderson, Mayor of the Town of Steilacoom. In one letter, Micone submitted his resignation as police chief, "due to present working conditions and an evident understanding within my own self, my services are no longer needed." In the other letter, Micone protested Mayor Anderson's order that he report for psychological evaluation, and requested that he be furnished with the authority for the Mayor's order.

On September 8, Mayor Anderson accepted, by letter, Micone's resignation and, given that resignation, he rescinded his directive to Micone to report for psychological testing.

On October 23, 1982, Micone sent a letter to the Steilacoom Civil Service Commission requesting a hearing regarding his resignation which he contended was made under "duress." On November 16, 1982, the Town of Steilacoom moved to have the commission deny Micone's request for a hearing on the ground that the commission lacked jurisdiction and, in the alternative, requested clarification of the issues and the applicable burden of proof. The commission set a hearing date on the Town's alternative motion and listed the issue to be addressed as: (1) whether

Micone's resignation was voluntary; (2) whether the commission has jurisdiction; (3) whether Micone has standing; (4) whether Micone's request for a hearing was timely; (5) the relief requested, and any other issues the parties desire to raise. The notice of hearing stated that any evidence should be submitted by affidavit. Both parties submitted memoranda, but neither party submitted affidavits.

Following the hearing on January 6, 1983, at which counsel for both parties presented argument, the commission entered an order denying Micone's request for a hearing pursuant to RCW 41.12.090. The commission found that Micone's resignation was voluntary and did not constitute a dismissal. In the alternative, the commission found that Micone's request for a hearing was not timely.

The Superior Court affirmed the commission's order. The court found that Micone's request for a hearing was timely, but concluded that the commission's decision that Micone's resignation was voluntary was not arbitrary and capricious.

■ On appeal, this court reviews the same record considered by the trial court to determine whether the civil service commission acted arbitrarily, capriciously, or contrary to law. *Greig v. Metzler,* 33 Wn. App. 223, 226, 653 P.2d 1346 (1982). This court's review is independent of the judgment of the trial court. *Greig v. Metzler, supra.*

■ A public employee's property interest in continued employment is created and defined by state law, and is protected by the due process clauses of the state and federal constitutions. *Olson v. UW,* 89 Wn.2d 558, 564, 573 P.2d 1308 (1978). A public employee has no vested property right in public employment and possesses no due process rights apart from the protections afforded by statute. *Olson v. UW, supra.* The relevant statute here is RCW 41.12, which defines the terms and conditions of employment as a city policeman. RCW 41.12.090 sets forth the procedures for removal, suspension, demotion or discharge of a city policeman. It provides, in pertinent part:

> No person in the classified civil service who shall have been permanently appointed or inducted into civil service

under provisions of this chapter, shall be removed, suspended, demoted or discharged except for cause, and only upon written accusation of the appointing power, or any citizen or taxpayer; a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission. Any person so removed, suspended, demoted or discharged may within ten days from the time of his removal, suspension, demotion or discharge, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such removal, suspension, demotion or discharge was or was not made for political or religious reasons and was or was not made in good faith [f]or cause. . . .

All investigations made by the commission pursuant to the provisions of this section shall be had by public hearing, after reasonable notice to the accused of the time and place of such hearing, at which hearing the accused shall be afforded an opportunity of appearing in person and by counsel, and presenting his defense. . . .

Evidently, the problem faced by the commission was how to proceed upon an allegation of involuntary resignation. Micone contends that he was entitled to a full hearing pursuant to RCW 41.12.090 for the purpose of determining whether his resignation was coerced or voluntary. He argues that he was denied due process by what he contends was the summary dismissal of his claim. The commission apparently treated the issue as one of jurisdiction and so conducted a hearing to determine whether the resignation was, in effect, a dismissal, in which case a hearing pursuant to RCW 41.12.090 would be necessary.

■ The question of the voluntariness of a resignation, however, is both a question of jurisdiction and a question of the merits. *See Burgess v. Merit Sys. Protec. Bd.*, 758 F.2d 641, 643 (Fed. Cir. 1985). It is a question of jurisdiction because the commission is not authorized by the statute to investigate voluntary resignations. However, case law clearly recognizes that an involuntary or coerced resignation is equivalent to a discharge. *Barrett v. Weyerhaeuser*

*Co. Severance Pay Plan*, 40 Wn. App. 630, 636, 700 P.2d 338 (1983); *Burgess v. Merit Sys. Protec. Bd., supra; Dabney v. Freeman*, 358 F.2d 533, 535 (D.C. Cir. 1965). A discharge effected by a coerced or involuntary resignation would, per se, not comply with the procedural requirements of RCW 41.12.090 and would be an improper discharge. A finding of involuntary resignation would then entitle the employee to reinstatement and, possibly, back pay. Therefore, the question is also one of the merits. We hold that, because it is also a question of the merits, the determination of the voluntariness of a resignation must be made pursuant to an investigation and hearing as provided for in RCW 41.12.090.[1]

The initial question before us then is whether the procedure followed by the Steilacoom Civil Service Commission complied with RCW 41.12.090. The commission did hold a hearing, after reasonable notice, for the purpose, among others, of determining whether Micone's resignation was voluntary. But, oddly enough, the commission held that hearing to determine whether a hearing pursuant to RCW 41.12.090 should be held. However, had the commission determined that his resignation was involuntary, a further hearing would have been redundant because an involuntary resignation is, as we have concluded, equivalent to a discharge that does not comply with the procedures mandated by RCW 41.12.090.

What clouds our review of the adequacy of the hearing that was held is our uncertainty as to the limitations, if any, that the commission *actually* placed upon the presentation of evidence at the hearing. The notice of the hearing stated that "[a]ny testimony deemed pertinent by either party should be submitted by affidavits . . .," thus implying that evidence by witness testimony might not be per-

---

[1] Under federal law, a public employee who raises a nonfrivolous allegation of involuntariness of a resignation must be afforded a hearing. *See, e.g., Burgess v. Merit Sys. Protec. Bd., supra; Covington v. Department of Health & Human Servs.*, 750 F.2d 937 (Fed. Cir. 1984); *Dabney v. Freeman, supra.*

mitted. Among the minimal due process guaranties that must be afforded in a civil service adjudicatory hearing concerning a discharge is the right to present evidence through the testimony of sworn witnesses. *Nirk v. Kent Civ. Serv. Comm'n,* 30 Wn. App. 214, 216–17, 633 P.2d 118, *review denied,* 96 Wn.2d 1023 (1981). Here, the very fact that the hearing was held for the purpose of determining whether a further hearing pursuant to RCW 41.12.090 should be held implies that the hearing that was held was a less formal and comprehensive hearing than the statutorily mandated hearing that was denied.

Nevertheless, the record before us demonstrates that Micone waived the due process protections that may have been available to him. The record indicates that Micone could have called witnesses but, for various reasons, did not. During his argument, Micone's counsel stated that he attempted, on the day of the hearing, to subpoena a witness, but was unsuccessful in doing so. Micone's counsel also stated that he would have liked to ask the Mayor some questions, but the Mayor was not in attendance. No evidence suggests any attempt to subpoena the Mayor. Micone made no request for a continuance to obtain the attendance and testimony of any witness. Further, Micone's counsel expressly stated that he would not call Micone as a witness. The record does not support Micone's contention during oral argument before us that the commission did not allow him to call witnesses at the hearing. Not only did Micone not attempt to call witnesses or show that he was prevented from doing so, Micone presented no evidence in affidavit form as requested by the commission. In short, Micone asked the commission to decide on very meager evidence the very issue of the voluntariness of his resignation for which he wanted a further hearing. The commission provided Micone with the opportunity to present his position that he resigned involuntarily; we are not convinced that such opportunity could not have provided the required due process protections. The manner in which Micone chose to utilize that opportunity effectively waived any such protec-

tions that might have been afforded by the commission.

The next issue presents the question of whether the commission's conclusion that Micone resigned voluntarily was arbitrary or capricious or contrary to law. The commission's conclusion will be held arbitrary and capricious only if it is found to be willful and unreasoning and in disregard of the facts and circumstances. *UPS v. Department of Rev.*, 102 Wn.2d 355, 365, 687 P.2d 186 (1984).

Micone argued before the commission that his resignation was involuntary and argues before this court on appeal that his resignation was the result of a "constructive discharge." Neither theory is supported by the evidence.

To determine whether a resignation is coerced or voluntary, the trier of fact must examine the surrounding circumstances to determine the ability of the employee to exercise his free choice. *Scharf v. Department of Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983). To begin with, however, a resignation is presumed to be voluntary and it is incumbent upon the employee to introduce evidence to rebut that presumption. *See Gonzalez v. Department of Transp. (FAA)*, 701 F.2d 36, 38 (5th Cir. 1983). A withdrawal of a resignation or an attempt to do so may vitiate the element of voluntariness. *See Scharf v. Department of Air Force, supra.*

Micone contended before the commission that the Mayor's directive to him to submit to a psychological evaluation was intended to and had the effect of coercing him to resign. That directive and its impact upon Micone is weak evidence that Micone had no choice but to resign in the face of it. Other, more viable options were certainly available. Micone at least partially exercised one of those options by challenging the Mayor's authority to order him to submit to psychological testing. Additionally, Micone made no explicit withdrawal of his resignation. The evidence is simply insufficient to rebut the presumption of voluntariness.

Neither does the Mayor's order to Micone nor any

other evidence support a finding of constructive discharge.[2] Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable thereby forcing the employee to resign. *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wn. App. at 631. To find constructive discharge, the trier of fact must be satisfied that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign. *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir. 1980). We cannot find that a reasonable person in Micone's position would feel compelled to resign in the face of being required to submit to psychological testing.

The commission did not act arbitrarily and capriciously or contrary to law in concluding that Micone voluntarily resigned. We do, however, find that Micone's request for a hearing was timely because it was made within 10 days of his separation on October 14. Though the commission's contrary conclusion was erroneous and though the commission did have jurisdiction to hold a hearing pursuant to RCW 41.12.090, we nevertheless, for the reasons stated, affirm the substance of the commission's order. The substance of that order is that further investigation pursuant to RCW 41.12.090 is unwarranted because Micone was not discharged.

Affirmed.

WORSWICK, C.J., and ALEXANDER, J., concur.

Review denied by Supreme Court October 29, 1986.

---

[2]We question whether the doctrine of constructive discharge even applies to employment governed by civil service rules. The doctrine is generally, if not exclusively, applied to employment at will situations. *See Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wn. App. at 632.