[No. 26861-6-III.   Division Three.   December 2, 2008.]

PATRICIA TOWNSEND, *Appellant*, v. WALLA WALLA SCHOOL DISTRICT, *Respondent*.

*Kristian E. Hedine* (of *Virtual In-House Counsel, PLLC*), for appellant.

*Gerald J. Moberg* and *Jennifer D. Homer* (of *Jerry J. Moberg & Associates*), for respondent.

¶1 BROWN, J. — Patricia Townsend appeals the summary dismissal of her hearing disability, retaliation, and constructive discharge claims against the Walla Walla School District (District). Because we agree no material fact issues remain and Ms. Townsend has failed to establish her claims as a matter of law, we affirm.

## FACTS

¶2 The District hired Ms. Townsend as a part-time assistant cook at Walla Walla High School in August 2001. Her job application noted she wore hearing aids because she was clinically deaf. In March 2002, Ms. Townsend transferred to Garrison Middle School, where she could work slightly more hours, resulting in more pay and benefits. Cindy Strang, Garrison's head cook, was her supervisor. Ms. Townsend's primary responsibility was washing dishes. She had difficulty hearing while washing dishes because of dishwasher noise and her inability to read lips

with her back turned to her co-workers, a situation partly exacerbated by the different physical surroundings. Ms. Strang was dissatisfied with Ms. Townsend's work; the two apparently did not get along. Ms. Townsend worked at Garrison for nine days before the District granted her a transfer back to the high school.

¶3 Ms. Townsend then filed an administrative complaint with the District against Ms. Strang, alleging hostile work environment, discrimination, and harassment. She alleged that on her first day at Garrison, Ms. Strang "rolled her eyes at her and said, 'another hard of hearing person.'" Clerk's Papers (CP) at 86. She alleged Ms. Strang told her she could not work with her because she was "too hard of hearing." CP at 84. The District's investigation found no harassment or disability discrimination, but it did direct Ms. Strang to get training on better handling the situation. Ms. Townsend continued at the high school before transferring to a full-time position at Blue Ridge Elementary.

¶4 In October 2004, Ms. Townsend sued the District for employment discrimination at Garrison. In November 2004, while still working at Blue Ridge, one of Ms. Townsend's hearing aids needed repair. Pam Milleson, food services director, asked Ms. Townsend to use sick time during the repair because of workplace safety reasons. Ms. Milleson instructed her not to attend a November 4, 2004 in-service kitchen training because of the safety issues. Ms. Townsend disregarded Ms. Milleson's instructions and appeared at the training complaining of discrimination. After an argument, the extent of which is disputed, Ms. Milleson asked Ms. Townsend to leave and escorted her out of the training. Ms. Townsend quit on December 9, 2004 and soon amended her complaint to include retaliation and constructive discharge claims.

¶5 Ms. Strang deposed that no specific incident occurred the first day, but on Ms. Townsend's last day, she admitted to her supervisor that she threw her hands up and said, "there [is] no reason that [Ms. Townsend's] lack of hearing should make my job harder." CP at 193. Ms. Strang related

Ms. Townsend did not do an acceptable job at Garrison because she worked too slowly, questioned instructions and orders, and often asked to leave early. The trial court granted the District summary judgment on all claims, without ruling on whether Ms. Townsend was disabled. She appealed.

## ANALYSIS

¶6 The issue is whether the trial court erred in summarily dismissing Ms. Townsend's discrimination and retaliation/constructive discharge claims. Ms. Townsend contends material facts remain (1) regarding whether Ms. Strang treated her differently because of her hearing impairment and (2) surrounding her resignation.

¶7 When reviewing a summary judgment grant, we engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005). Summary judgment is appropriate only where no genuine material fact issues remain and the moving party is entitled to judgment as a matter of law. CR 56(c). We view facts and reasonable inferences in a light most favorable to the nonmoving party. *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996). Summary judgment is proper if "reasonable minds could reach only one conclusion from the evidence presented." *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 609, 146 P.3d 914 (2006) (citing *Korslund*, 156 Wn.2d at 177).

¶8 "In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). To defeat summary judgment, the employee "must establish specific and material facts to support each element of his or her prima facie case." *Id.*

■ ¶9 The Washington Law Against Discrimination, chapter 49.60 RCW, makes it an unfair practice for an employer "[t]o discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability." RCW 49.60.180(3). Failure to accommodate is a cause of action available to a disabled employee under RCW 49.60.180. While the lower court did not decide if Ms. Townsend had a disability, our de novo review standard allows us to review that issue.

■ ¶10 The version of RCW 49.60.040 in effect when Ms. Townsend resigned did not define "disability." Former RCW 49.60.040 (2002). In *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006), our Supreme Court defined "disability" based on the federal Americans with Disabilities Act of 1990's, 42 U.S.C. §§ 12101-12213, definition. The court held that a plaintiff has a disability if he "(1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." 157 Wn.2d at 228. "Major life activities" are " 'those activities that are of central importance to daily life.' " *Id.* at 229 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)).

¶11 The legislature then amended RCW 49.60.040 to include a substantially broader definition of "disability." It states:

(a) "Disability" means the presence of a sensory, mental, or physical impairment that:

(i) Is medically cognizable or diagnosable; or

(ii) Exists as a record or history; or

(iii) Is perceived to exist whether or not it exists in fact.

(b) A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter.

RCW 49.60.040(25).

¶12 The legislature expressed its intent for the statute to apply retroactively. LAWS OF 2007, ch. 317, § 3. Our Supreme Court recently accepted review of whether the doctrine of separation of powers precludes application of the 2007 amendments to causes of action occurring before the statute's enactment, despite specific legislative intent that the act apply retroactively. *See Hale v. Wellpinit Sch. Dist. No. 49*, No. 80771-0 (Wash., argued Oct. 21, 2008).

¶13 Under either definition, Ms. Townsend's hearing impairment would be characterized as a "disability." Ms. Townsend's impairment exists even when mitigated. And, when mitigated, it still limits major life activities, such as effective communication. By comparison, under a workers' compensation claim, hearing loss is considered a disability. *See McIndoe v. Dep't of Labor & Indus.*, 144 Wn.2d 252, 257, 26 P.3d 903 (2001) ("[h]earing loss is a specified scheduled partial disability").

¶14 Ms. Townsend benefits from hearing aids. But, these aids do not restore perfect hearing as evidenced by her statements that she could not hear while doing dishes and needed to face people to read lips even when wearing her hearing aids. The lack of advancement in restoring absolute hearing distinguishes this case from a seeing impairment case where sight was restored by corrective lenses. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-89, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) (because corrective lenses returned the plaintiff's eyesight to "20/20," no disability existed). Accordingly, Ms. Townsend has demonstrated a qualified disability.

¶15 A prima facie case for discrimination based on failure to accommodate consists of four elements:

"(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying

substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality."

*Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004) (quoting *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 192-93, 23 P.3d 440 (2001)).[1]

¶16 Ms. Townsend's accommodation claim fails because she cannot meet the first element. When using her hearing aids, her hearing impairment did not have a substantially limiting effect on her ability to assist in the kitchen or to wash dishes. Ms. Townsend acknowledges in her complaint that her co-workers commented on how "eas[il]y her disability was accommodated." CP at 7.

¶17 Here, reasonable minds could reach but one conclusion: that the District accommodated her less-than-substantial limitation by asking co-workers to take precaution to look at Ms. Townsend so she could lip-read and tap her on the shoulder to get her attention. The facilities at Garrison made this more difficult. Ms. Townsend's brief and singular personal conflict with Ms. Strang was immediately investigated by the District and resolved. Ms. Townsend's request to transfer back to the high school was granted. Ms. Townsend eventually secured and successfully worked full time at another school until the hearing aid repair problem arose. In any event, without establishing the first accommodation-claim element, Ms. Townsend has not met her burden of establishing a prima facie case of discrimination.

¶18 Turning to Ms. Townsend's retaliation and wrongful constructive discharge claims, we presume a resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge. *Molsness v. City of Walla Walla*, 84 Wn. App. 393, 398, 928 P.2d 1108 (1996). An employee may rebut this presumption by showing the resignation was prompted by duress or an employer's

---

[1] When amending RCW 49.60.040(25), the legislature codified this test at RCW 49.60.040(25)(d).

oppressive actions. *Id.* But duress is not measured by an employee's subjective evaluation of a situation, and an undesirable work situation does not, in itself, obviate the voluntariness of a resignation. *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wn. App. 630, 638, 700 P.2d 338 (1985); *Molsness,* 84 Wn. App. at 399.

¶19 "Washington cases generally describe constructive discharge as involving deliberate acts by the employer that create intolerable conditions, thus forcing the employee to quit or resign." *Korslund,* 156 Wn.2d at 179. The *Korslund* court noted, "an employee who is forced to permanently leave work for medical reasons may have been constructively discharged." *Id.* at 180.

¶20 Here, the District granted Ms. Townsend's every request for transfer. She was promoted to full time, which resulted in increased pay and benefits. While asked to use sick time while her hearing aid was being repaired, she was not asked to work without pay, nor was she suspended. Ms. Townsend fails to raise any material fact issue that the District's safety-based decision to require hearing aid repair was a deliberate act creating an intolerable condition that forced her to resign or quit. *Id.* at 179. Ms. Townsend's contrary arguments based on her subjective beliefs do not create genuine issues of material fact. *Barrett,* 40 Wn. App. at 638. Thus, we conclude she has not overcome the presumption that her resignation was voluntary.

¶21 Our conclusion obviates the need to analyze Ms. Townsend's retaliatory discharge claims. Similarly, we do not address her attorney fee arguments because she has not prevailed. In sum, the trial court properly granted the District's motion for summary judgment dismissal of Ms. Townsend's suit.

¶22 Affirmed.

KULIK, A.C.J., and KORSMO, J., concur.